[Cite as *Kahle v. Graham*, 2018-Ohio-5296.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


DAVID KAHLE,                                    :

    Appellant,                              :          CASE NO.  CA2017-11-060

    - vs -                                  :          O P I N I O N
                                                      12/28/2018
                                            :

KELLY GRAHAM,                                   :

    Appellee.                               :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2016 JG 22900


The Helbling Law Firm, LLC, John J. Helbling, 6539 Harrison Avenue, Box 124, Cincinnati, Ohio 45247, for appellant

Kroener Hale Law Firm, Mary K. Armacost, 101 North Riverside Drive, Batavia, Ohio 45103, for appellee


**PIPER, J.**

{¶ 1}   Appellant, David Kahle ("Father"), appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, issuing orders regarding shared parenting of the child Father shares with appellee, Kelly Graham ("Mother").[1]

---

1. Mother did not file an appellee's brief.  Pursuant to App. R. 18(C), this court may "* * * accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶ 2} Mother and Father, who were not married, lived together and Father stayed home during the day to care for the couple's son while Mother worked outside the home. Father has historically worked part time as a DJ, with most of his jobs on Thursday nights and weekend nights.

{¶ 3} In 2016, when the child was 11 years old, the parties' relationship soured, and Father moved out of the home he shared with Mother. Father then filed a complaint to establish custody of the child. Father attached an affidavit to his complaint, in which he, among other issues, asserted that Mother bathed and changed her clothing in front of the child. Subsequent to Father filing the complaint, each party filed a proposed shared parenting plan suggesting how parenting time would be spent with their son. The couple's son is autistic with limited oral communication skills and receives Social Security income, which the parties began splitting once Father moved out of the home.

{¶ 4} The court appointed a guardian ad litem ("GAL") for the child, who filed a report with the court noting several parenting issues that Mother and Father could not agree upon, including Mother's nudity. However, the parties agreed on a four-week rotation schedule for parenting time except for how the child was to spend his Thursday and Sunday nights. The unresolved issues, as set forth in the GAL's report, were tried before a magistrate, including each parent's right of first refusal, residential parenting status, child support obligations, and which parent would claim the child's social security income. The record provided, however, contains no testimony regarding the nudity issue.

{¶ 5} The magistrate issued a decision in which the parents were awarded rotating two-week periods of parenting time, and neither party was named the sole residential parent for school purposes. Instead, both parents were regarded as residential parent so long as they remain in the child's current school district. The parties were also ordered to offer the other parent the right of first refusal if the party with parenting time was unable to care for the

child for more than three hours.

{¶ 6} Father filed objections to the magistrate's decision, and the juvenile court considered the objections after a hearing on the matter. The juvenile court adopted the magistrate's decision, but terminated Mother's child support obligation. Father now appeals the juvenile court's decision, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT – BOTH THE MAGISTRATE AND TRIAL JUDGE – ABUSED THEIR DISCRETION IN FAILING TO ADDRESS DEFENDANT-APPELLEE'S NUDITY EXPOSURE.

{¶ 9} Father argues in his first assignment of error that the juvenile court abused its discretion in not addressing Mother's nudity in the presence of the child.

{¶ 10} In his affidavit attached to his custody motion, Father expressed his concerns that Mother bathed and changed her clothing in the child's presence, thus exposing her nudity to the child. However, during the hearing before the magistrate, Father did not testify regarding the nudity and did not cross-examine Mother about her being naked in front of the child. Although Father had electronic recordings of discussions with Mother regarding her nudity, these were not admitted as evidence during the hearing and not a single mention of Mother's nakedness was made during the hearing.

{¶ 11} In addressing Father's objections to the magistrate's decision, the juvenile court specifically found that the issue of Mother's nudity was not presented at the hearing. The court noted that "no testimony was presented regarding the mother's habits in this regard or the alleged effects this had upon the child." The court further noted that some mention was made of the issue in the GAL's report in which the GAL noted Father's concerns. However, the juvenile court found that Father's statements in the GAL's report constituted hearsay and held "little weight." As such, the juvenile court held that the magistrate was

correct in not issuing orders specific to Mother's nudity in the presence of the child because the issue had not been litigated during the hearing.

{¶ 12} Even so, the juvenile court addressed Father's concerns about Mother's nudity in its written decision by admonishing both parents "to avoid circumstances that create a likelihood that the child may observe them naked." As such, and despite not issuing a direct order, the juvenile court did consider Father's request that Mother remain clothed when in the child's presence and specifically directed both parties to refrain from nudity around the child.

{¶ 13} Although Father referred to Mother's nudity in his affidavit and the GAL recognized the issue within his report, Father failed to litigate the issue during the hearing. It was not the juvenile court's responsibility to "connect the dots" "absent testimony to support an argument that was not made at trial." *Singh v. Singh*, 12th Dist. Warren No. CA2002-08-080, 2003-Ohio-2372, ¶ 10.

{¶ 14} Father's first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE TRIAL COURT - BOTH THE MAGISTRATE AND TRIAL JUDGE - ABUSED THEIR DISCRETION IN FAILING TO IMPLEMENT THE SHARED PARENTING PLAN OF THE PARTIES AND GAL.

{¶ 17} Father argues in his second assignment of error that the juvenile court erred in not adopting the shared parenting plan agreed upon by the parties and the GAL.

{¶ 18} Trial courts are entitled to broad discretion in custody proceedings. *Southworth v. Eskins*, 12th Dist. Fayette No. CA2013-10-028, 2014-Ohio-4523, ¶ 8. Given that custody issues are some of the most difficult decisions a trial judge must make, the trial court must be given wide latitude in considering all of the circumstances and evidence, and the decision must not be reversed absent an abuse of discretion. *Id.* The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude

is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} Generally, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration and a trial court is not bound by the GAL's recommendation. *In re S.W.*, 12th Dist. Brown No. CA2011-12-028, 2012-Ohio-3199, ¶ 14.

{¶ 20} While the parties agreed to some aspects of the visitation schedule, the record indicates that they were not in complete agreement regarding how parenting time would be allocated. Thus, the juvenile court was placed in a position of determining several issues regarding the plan, including who would have the child for overnight visits on Thursday and Sunday nights. In deciding what parenting time orders were in the best interest of the child, the court decided the issues the parties could not agree upon and changed the proposed visitation rotation schedule from four weeks to two weeks. The court also ordered the right of first refusal to commence once the parent with visitation could not care for the child for three hours or more.

{¶ 21} Despite Father's argument that the magistrate and juvenile court failed to offer reasons for the departure from the suggested parenting time schedule and implementation of the right of first refusal, the record includes the magistrate and juvenile court's full analysis of the issues.

{¶ 22} The magistrate and juvenile court considered that Father works part time as a DJ and often works Thursday nights and weekend nights until after 2:00 a.m. Thus, when working, Father does not return home until after the child's bedtime so that the child would not be spending time with Father even if Father was awarded parenting time during the weekend. Furthermore, it is not beneficial to the child to move him from home to home once he goes to bed for the night, which was a possibility if the child were ordered to stay with

Father on the nights that Father works.

**{¶ 23}** Moreover, the magistrate and juvenile court considered the importance of the child's schedule and the need for consistency given the child's autism and the importance of routine in his life. Additionally, the two-week change ensured that the child will be able to sleep longer in the morning given Mother's willingness to change her work schedule, thus making it less likely that the child will fall asleep in school as he had been accustomed to in the past.

**{¶ 24}** The magistrate and juvenile court also considered that the two-week schedule will allow Father to maintain his role in the child's education while also allowing Mother to become more active in that aspect of the child's life by permitting her direct communication and interaction with the school when she takes the child to school and/or picks him up. The schedule further "maximizes" the child's visitation time with both parents based on each party's work schedule while minimizing the transitions between each parent's home on weekly or even daily bases. At the same time, the schedule allows each parent to facilitate activities, such as going to church, with the child given the two-week rotation.

**{¶ 25}** Moreover, the court explained why it set the right of first refusal to initiate once the parent with visitation rights cannot care for the child for three hours or more. The court noted that the child's challenges related to his autism necessitated a unique schedule that was appropriate to him and his needs. The court noted the child's comfort and adjustment to both parents' homes, and the limited relationship the child shared with others. Thus, using a three-hour time frame for the right of first refusal would insure that the other parent would be the child's caregiver whenever possible, thus providing for the child's need for "predictability, stability, and safety."

**{¶ 26}** After reviewing the record, we find that the magistrate and juvenile court gave sufficient reasoning to support its decision to award parenting time based on a two-week

rotation rather than that agreed to by the parties and the GAL, as well as the time frame used in regard to the right of first refusal. Thus, there is no abuse of discretion, and Father's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT – BOTH THE MAGISTRATE AND THE TRIAL JUDGE – ABUSED THEIR DISCRETION IN FAILING TO PROPERLY CALCULATE THE CHILD SUPPORT AMOUNT OWED BY DEFENDANT-APPELLEE.

{¶ 29} Father argues in his final assignment of error that the juvenile court erred in calculating child support obligations.

{¶ 30} Within the magistrate's decision, the magistrate ordered Mother to pay child support of $136.51 per month. In responding to Father's objections, the juvenile court noted that Father objected to the magistrate's child support order for several reasons and then analyzes each reason before overruling Father's objection. However, in its final orders, the juvenile court ordered, "pursuant to agreement of the parties, that effective November 1, 2017, Mother's child support obligation shall be terminated and Father shall be designated the payee for [the child's] Social Security Disability Income." The juvenile court adopted the magistrate's decision, which included an order for Mother to pay child support, but then terminated the child support based upon an agreement not in the record. Thus, our review of the record raises more questions than it provides sufficient answers.

{¶ 31} Without an agreement being identified or an explanation, we are unable to review the juvenile court's decision regarding termination of Mother's child support order. As such, we reverse the juvenile court's decision regarding child support. On remand, the juvenile court shall permit the record to be developed in support of the amount of child support, if any, to be ordered.

{¶ 32} Judgment affirmed in part, reversed in part, and the matter is remanded for

further proceedings.

RINGLAND, P.J., and M. POWELL, J., concur.